This is an appeal by James Arthur Day of his conviction for trafficking in cannabis, in violation of § 20-2-80, Code of Alabama 1975. Appellant was convicted by a Morgan County jury and was sentenced to 25 years' imprisonment and fined $25,000.
The record indicates that Walter Price, a deputy sheriff in Morgan County, observed appellant, who was a suspected drug dealer, driving a black Mercury Cougar automobile in Decatur, Alabama. Appellant pulled his car off to the side of the road, as did the driver of a pickup truck that appeared to be following appellant's car. Appellant and the driver of the truck got out of their vehicles and met at the rear of appellant's car. The driver of the truck, who was later determined to be Bruce Adams, was carrying a satchel. The two men opened the trunk of appellant's car, and Deputy Price observed Adams place the satchel into the trunk. After a few seconds of "shuffling around," Adams removed the satchel and the two men departed.
Deputy Price followed Adams's truck and advised Officer Keith Russell, by radio, to stop the truck, which he did. A search of the truck revealed a briefcase containing two plastic bags of marijuana. Adams and a passenger in the truck, Shannon Cobb, were arrested.
After questioning Adams, Deputy Price instructed Officer Hudson to keep appellant's vehicle under surveillance while he obtained a search warrant. Officer Hudson proceeded to appellant's residence, where he observed his car. After about 30 minutes, appellant emerged from his residence and drove off. Officer Hudson informed Deputy Price that appellant was leaving and, a short time later, Officer Hudson stopped appellant's car. Officer Hudson asked appellant if he could search his car, and appellant responded by asking whether he had a warrant. After Officer Hudson informed him that Deputy Price was in the process of obtaining one, appellant said that "there would be no need to do that" and that he could "go ahead and look." Hudson discovered a duffel bag, in *Page 412 
the trunk of the car, containing four bags of what was later determined to be marijuana. As a result of this discovery, appellant was arrested and ultimately convicted of trafficking in cannabis; he now appeals from that conviction.
 I
In appellant's first argument, he contends that the trial court erred in denying his motion for a judgment of acquittal. The basis of appellant's argument is that the state's evidence was insufficient to prove that he was in possession of more than 2.2 pounds of marijuana, as is required for a conviction of trafficking in cannabis. Ala. Code (1975), § 20-2-80.
During the trial of this case, the state called Martha Odom, a forensic drug chemist with the Alabama Department of Forensic Sciences, to testify to the identity and weight of the material found in appellant's possession. Odom stated that she weighed the entire quantity of material in the four bags and that its total weight was 3.9 pounds. Odom explained the manner in which she performed various analyses on the material and further testified that, as a result of these analyses, she determined that "[e]ach of the four bags contained marijuana."
Appellant contends that Odom's statement, "Each of the four bags contained marijuana," was insufficient to prove that the quantity of marijuana contained within the 3.9 pounds of plant material was in excess of 2.2 pounds. We disagree. "Marijuana" is defined by § 20-2-2(15), Code of Alabama 1975, as follows:
 "All parts of the plant Cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. Such term does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination."
When a defendant is being prosecuted for trafficking in marijuana, pursuant to § 20-2-80, the burden is clearly on the state to prove that he was in possession of more than 2.2 pounds of marijuana, as that term is defined above. Mulhern v.State, 494 So.2d 787 (Ala.Cr.App. 1986). However, once the state has established the existence of the requisite amount of marijuana, the burden is then on the defendant, if he seeks to contest the validity of that weight, to show that there was matter contained in the material weighed which should have been excluded pursuant to § 20-2-2(15). Ex parte Bohannon, [Ms. 87-59, July 29, 1988] (Ala. 1988); Dickerson v. State,414 So.2d 998 (Ala.Cr.App. 1982).
In the instant case, Odom testified that the bags she received "contained almost exclusively . . . flowering tops." She further stated that there were stems in the material weighed, but nothing she would "really call stalks." InDickerson, the expert also testified that the plant material weighed contained stems. 414 So.2d at 1001. While recognizing that the terms "stalk" and "stem" "refer to the same portion of the plant, namely the main body or ascending axis of the plant which supports the secondary branches, leaves, and fruit," id.
at 1003, the court considered the expert's use of the term "stem," within the context of his testimony, and concluded that he was not referring to the mature stalk, which is excluded by statute, but was referring to the branches. Id. at 1002. As the court in Dickerson did, we have considered Odom's use of the term "stem" within the context of her testimony, and we find that she was referring, not to the mature stalk, but to branches. Her testimony clearly indicates that, to her, stems and stalks are two totally different parts of the cannabis plant. Here, as in Dickerson, "[i]t is clear that no mature stalks were present in the marijuana." Id.
Therefore, the question before us is whether the flowering tops and the branches *Page 413 
of the cannabis plant fall within the exclusion clause of § 20-2-2(15) and were, therefore, improperly included in calculating the weight of the marijuana found in appellant's possession. The definition of "marijuana," as noted above, provides for the inclusion of all parts of the cannabis sativa L. plant in the term "marijuana" except for certain parts which are specifically excluded. Those portions excluded are the mature stalk of the plant and the derivatives of the mature stalk, with the exception of the resin; the oil or cake made from the seeds of the plant; and the sterilized seeds of the plant. Nowhere in the exclusion clause is there a mention of either the flowering tops or the branches of the plant. Therefore, both fall within the definition of "marijuana," §20-2-2(15), and likewise both were properly included in determining the weight of the marijuana in appellant's possession.
Appellant relies on this court's holding in Mulhern v. State, supra, as support for his argument that Odom's statement, "Each of the four bags contained marijuana," was insufficient to prove that the amount of marijuana contained in the material weighed was in excess of 2.2 pounds. In Mulhern, the defendant's conviction for trafficking was reversed because the state's evidence, establishing the weight of the marijuana possessed, consisted of a lab report which revealed only the weight of the plant material and did not provide the actual weight of the marijuana contained in the plant material. However, in the instant case, the evidence clearly established, as noted above, that the only thing contained in the bags was marijuana, as that term is defined in § 20-2-2(15). And unlike in Mulhern, Odom's testimony in the case at bar was that the bags contained marijuana, not that the material within the bags contained marijuana. In Mulhern, the lab report indicated the presence of marijuana in the material, while, in the instant case, Odom's testimony established that all of the material in the bags was, in fact, marijuana.
Therefore, in light of the conclusion, from the totality of the facts, that the material weighed was exclusively marijuana, Odom's testimony that the total weight was 3.9 pounds was sufficient to prove that appellant was in possession of more than 2.2 pounds of marijuana.
 II
Appellant further contends that the trial court erred in denying his motion to suppress the marijuana found in the trunk of his car. He argues that the search was conducted without a warrant and, therefore, that the evidence obtained should have been suppressed.
The bulk of appellant's argument on this issue concerns the validity and admissibility of his alleged consent given to Officer Hudson, allowing him to search appellant's car. However, because of this court's finding, as discussed below, that there was probable cause under the circumstances to authorize a warrantless search, determination of this issue of consent is not necessary in this case.
As a general rule, warrantless searches are per se
unreasonable as being violative of the Fourth Amendment. Youtzv. State, 494 So.2d 189 (Ala.Cr.App. 1986). However, when the circumstances of a case give rise to one of the well-documented exceptions to this general rule, a warrantless search may be acceptable. Dale v. State, 466 So.2d 196 (Ala.Cr.App. 1985). One of these exceptions, which will be the subject of our attention here, arises when exigent circumstances exist along with adequate probable cause. This particular exception "authorizes the warrantless search of a vehicle when the police initially have probable cause to believe that the vehicle contains contraband or evidence of a crime, and if exigent circumstances exist." Oliver v. State, 479 So.2d 1385, 1388
(Ala.Cr.App. 1985). The requisite probable cause is present "if a reasonably prudent person, based on the facts and circumstances which the officer knows, would be justified in concluding that the items sought are connected with criminal activity and that they will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213 [103 S.Ct. 2317,76 L.Ed.2d 527] . . . (1983)." Gord v. *Page 414 State, 475 So.2d 900, 903 (Ala.Cr.App. 1985). And "[e]xigent circumstances exist whenever an object to be searched is mobile or moveable, such as an automobile." Spencer v. Town of Gordo,389 So.2d 182, 184 (Ala.Cr.App. 1980) (citations omitted).
A suppression hearing was held to determine the legality of the search leading to the discovery of the marijuana in appellant's car. In this hearing, Deputy Price testified to the following: During a period of approximately four years preceding the day of appellant's arrest, he had personally received information from various sources concerning appellant's continuing involvement in drug trafficking. As a result of the information from one such source, appellant's residence had been searched and marijuana and paraphernalia was found and appellant had been arrested. On other occasions, Deputy Price had received information from confidential informants and individuals who had been arrested for drug violations that appellant was selling marijuana from the trunk of a black Cougar automobile. And, on one particular occasion when a Mark Thompson was arrested in a church yard and found to be in possession of 15 pounds of marijuana, a black Cougar automobile, with license plates registered to appellant, was seen leaving the church. This arrest was made subsequent to an informant's providing information that Thompson was going to meet, and to buy marijuana from, appellant.
In regard to the instant offense, Deputy Price testified to the following: On the day of appellant's arrest, he observed a transaction between appellant and Bruce Adams at the trunk of appellant's black Cougar automobile. Adams, who was arrested minutes later for possession of marijuana, said that he had gotten the marijuana from appellant and that there were several more bags in a green duffel bag in appellant's trunk. Subsequent to receiving this information, Deputy Price contacted Officer Hudson and informed him of the events that had transpired and of the information received from Adams. Officer Hudson then placed appellant's car under surveillance at his residence, while Deputy Price proceeded to obtain a search warrant. However, during this time, appellant came out of his residence and got into his vehicle and drove off, with Officer Hudson following. A short time later, appellant's car was stopped and Officer Hudson conducted the search.
Appellant argues, in his brief, that there was not sufficient probable cause to justify the search of appellant's car prior to the issuance of the search warrant. He contends that the past information received from informants could not have provided probable cause because those informants had not been established as being reliable. He further argues that the information from Adams could not be perceived as reliable and as providing adequate probable cause to search because Deputy Price testified that he had never met Adams before he was arrested that day. In evaluating the merits of these contentions, we must consider the information known to Deputy Price and Officer Hudson in a cumulative manner and not as if this search were the result of information received from one isolated informant. Deputy Price testified that he had been receiving information concerning appellant's drug trafficking activities from various sources over a four-year period. Moreover, Deputy Price personally observed the transaction between appellant and Adams and knew that it fit the method of operation by which appellant had long been suspected of selling marijuana. Finally, only minutes after the transaction occurred, Adams told Deputy Price that he had gotten the marijuana from appellant and that there were several more bags in appellant's trunk. Therefore, even if one of these sources of information were inadequate to supply sufficient probable cause to conduct a warrantless search, when they are taken as a whole, there can be no doubt that probable cause existed. The standard used in determining the existence of adequate probable cause requires a finding that a reasonably prudent person, knowing what the officer knew, would have justifiably believed that the items sought were contraband and that they were located in the place to be searched. Gord v. State, *Page 415 
supra. This standard was met in the instant case.
In light of the foregoing and of the fact that the place searched was an automobile traveling on a public street, which provided the necessary exigent circumstances, the warrantless search of appellant's automobile was justified. The trial court correctly denied his motion to suppress.
 III
Finally, appellant contends that the trial court erred in pronouncing his sentence without first affording him the opportunity for a pre-sentence hearing and report.
It was within the trial court's discretion to impose sentence without the benefit of a presentence report, for neither party timely submitted a written notice seeking such report. A.R.Crim.P.Temp. 3. See also James v. State,500 So.2d 474 (Ala.Cr.App. 1986). Appellant's written motion for a presentence report, filed one week after sentence was imposed, was untimely. However, we find that the trial court failed to follow the spirit of A.R.Crim.P.Temp. 6(b)(1), which provides the following:
 "Unless the court has no discretion as to the penalty to be imposed and no power to suspend execution of the sentence, the court shall conduct a sentence hearing, unless waived by the parties with consent of the court. The sentence hearing may commence immediately after a determination of guilt or may be continued to a later date to be set by the court."
"In our opinion, Alabama Rules of Criminal Procedure — Temporary Rules contemplate a hearing in which there should be no adjudication as to the punishment imposed or whether probation should be granted until both parties conclude their presentation of evidence and utilize their right to be heard."Graffeo v. State, 412 So.2d 312, 323 (Ala.Cr.App. 1982).
In the instant case, appellant was convicted of trafficking in cannabis, in violation of § 20-2-80, Code of Alabama 1975. This statute provides that any person found guilty of such an offense "shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $25,000." This minimum sentence is mandatory, and the trial court has no discretion in imposing such a sentence. Therefore, Rule 6, quoted above, does not require a pre-sentence hearing prior to the imposition of the mandatory minimum sentence of three years. In the present case, however, appellant was sentenced to 25 years' imprisonment, and any request for probation or partial suspended sentence was summarily denied. Such action could not properly be taken without a sentence hearing first, unless the hearing was waived by the parties with consent of the court. Although defense counsel acquiesced in the court's insistence upon sentencing appellant without a hearing, it was only after the trial court made it clear that, under its interpretation of the applicable statute, it could not consider suspending any portion of appellant's sentence. We do not construe this as a waiver under Rule 6.
Moreover, the instant case is distinguished from Ex parteGlover, 508 So.2d 218 (Ala. 1987), in that, in Glover, the trial court left open the post-sentence opportunity for defense counsel to present, after investigation, matters in mitigation of the sentence and Glover failed to do so. Here, the trial in effect stated, after rendering the sentence, that it would not consider any matters in mitigation or reconsider the sentence and, in effect, ruled on the post-sentence motions in advance. See Graffeo.
After a complete review of the record of this case and the applicable law, we find no error warranting reversal of the trial court's judgment of conviction, and it is hereby affirmed. However, this case is remanded to the Circuit Court of Morgan County with directions to conduct a sentence hearing and to provide the results of said hearing to this court upon return to remand.
JUDGMENT AFFIRMED; REMANDED WITH DIRECTIONS.
All Judges concur. *Page 416 
 ON RETURN TO REMAND
Pursuant to our remand, the Circuit Court of Morgan County conducted a sentence hearing pursuant to A.R.Crim.P.Temp. 6(b)(1). Upon conclusion of the hearing, the trial court resentenced appellant to fifteen years' imprisonment. The court ordered that appellant serve the first five years of that sentence in the penitentiary and suspended the balance, subject to appellant's being placed on probation for five years thereafter. The proceedings appearing to be in order, the judgment of the court below is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.